UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

JIMMY J. NEWELL,                                    )
                                                   )
        *Plaintiff*,                               )        No. 1:11-cv-86
                                                   )        *Mattice/Carter*
v.                                                 )
                                                   )
SHERIFF JAMES RUTH; CAPT. JON                      )
COLLINS; LT. JOLENE HICKMAN;                       )
SGT. LYNN ROE; QUALITY CONTROL                     )
CORRECTIONAL HEALTHCARE, INC.                      )
LPH BRE WOODS; DR. JERRY GURLEY;                   )
DR. BATES; LT. ANDERSON SANDERS;                   )
All Parties are Sued in Their Individual and       )
Official Capacities;                               )
                                                   )
        *Defendants*.                              )

## <u>MEMORANDUM</u>

Jimmy J. Newell ("Plaintiff"), a *pro se* prisoner, has filed a civil rights complaint

pursuant to 42 U.S.C. § 1983 (Court Doc. 2).  Plaintiff alleges he was denied adequate

access to a law library; injured due to Defendants' failure to properly classify and

separate dangerous offenders; sexually assaulted by an officer; denied nutritious meals;

denied medical attention; and negligently administered another inmate's medication.  In

addition, Plaintiff claims inmates are charged high prices on commissary items; charged

$2.75 each time money is put on their commissary account; have media and reading

material censored; charged high prices for telephone calls; denied a fair and impartial

tribunal when charged with violating rules; and "D-Seg" inmates are subjected to

"conditions that have a cumulative effect of cruelty[.]" (Court Doc. 2).

Plaintiff's motion to proceed *in forma pauperis* will be **GRANTED IN PART** and **DENIED IN PART** (Court Doc. 1), and for the reasons discussed below, Plaintiff's complaint will be **DISMISSED** *sua sponte* for failure to state a claim upon which relief may be granted (Court File No. 2).

## I.      APPLICATION TO PROCEED *IN FORMA PAUPERIS*

It appears from the application to proceed *in forma pauperis* submitted by Plaintiff that he lacks sufficient financial resources at the present time to pay the required filing fee of $350.00.   Plaintiff, however, is not relieved of the ultimate responsibility of paying the $350.00 filing fee.   Plaintiff's motion to proceed *in forma pauperis* is **GRANTED IN PART** and **DENIED IN PART** (Court Doc. 1).   It is **GRANTED** to the extent that Plaintiff can file his complaint without prepayment of the full filing fee but **DENIED** to the extent he will not be excused from paying the filing fee.   Rather, the Court **ASSESSES** the entire filing fee and permits Plaintiff to pay the filing fee in installments in accordance with the Prison Litigation Reform Act of 1995, Pub. L. No. 104-134, 28 U.S.C. § 1915(b)(1); *see McGore v. Wrigglesworth*, 114 F.3d 601, 604 (6th Cir. 1997), *abrogated on other grounds*, *Jones v. Bock,* 549 U.S. 199 (2007) and *LaFountain v. Henry*, 716 F.3d 944, 951 (6th Cir. 2013).   Plaintiff **SHALL** pay the full filing fee of three-hundred and fifty dollars ($350.00) pursuant to Prisoner Litigation Reform Act, Pub. L. 104-134, 110 Stat. 1321, codified in 28 U.S.C. § 1915.

Pursuant to 28 U.S.C. § 1915(b)(1)(A) and (B), the custodian of Plaintiff's inmate trust account at the institution where he now resides **SHALL** submit to the Clerk, United States District Court, 900 Georgia Ave., Room 309, Chattanooga, Tennessee 37402, as an initial partial payment, whichever is the greater of

2

       (a)     twenty percent (20%) of the average monthly deposits to Plaintiff's inmate trust account; or

       (b)     twenty percent (20%) of the average monthly balance in Plaintiff's inmate trust account for the six-month period preceding the filing of the complaint.

Thereafter, the custodian shall submit twenty percent (20%) of Plaintiff's preceding monthly income (or income credited to his trust account for the preceding month), but only when such monthly income exceeds $10.00, until the full filing fee of $350.00 as authorized under 28 U.S.C. § 1914(a) has been paid to the Clerk. 28 U.S.C. § 1915(b)(2).

The Clerk of Court will be **DIRECTED** to send a copy of this memorandum and order to the Sheriff of Bradley County, the Custodian of Inmate Trust Fund Accounts at the Bradley County Justice Center, the Commissioner of the Tennessee Department of Corrections, the Attorney General for the State of Tennessee, and the Court's Financial Deputy, to ensure the custodian of Plaintiff's inmate trust account complies with the portion of the Prison Litigation Reform Act relating to payment of the filing fee.

The agency having custody of Plaintiff **SHALL** collect the filing fee as funds become available. This order shall become a part of Plaintiff's file and follow the inmate if he is transferred to another institution. The agency having custody of Plaintiff **SHALL** continue to collect monthly payments from Plaintiff's prisoner account until the entire filing fee of $350.00 is paid.

Plaintiff will be **ORDERED** to notify this Court and Defendants or Defendants' attorney of any change of address if he is transferred to another institution, and to provide the prison officials at any new institution with a copy of this order. Failure of

3

Plaintiff to notify this Court of an address change and/or the new prison officials of this order and outstanding debt, will result in the imposition of appropriate sanctions against Plaintiff without any additional notice or hearing by the Court.

## II.     SCREENING

The Court screens the complaint to determine whether it should be dismissed as frivolous, malicious, or for failure to state a claim.  28 U.S.C. § 1915(e)(2) and § 1915A. When performing this task, the Court bears in mind that the pleadings of *pro se* litigants must be liberally construed and "held to less stringent standards than formal pleadings drafted by lawyers."  *Erickson v. Pardus*, 551 U.S.  89, 94 (2007) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).  Nevertheless, the complaint must be sufficient "to state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), which simply means the factual content pled by a plaintiff must permit a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## III.    FACTS

Plaintiff's complaint consists of a laundry list of general complaints about the Bradley County Justice Center along with a few complaints about his specific conditions of confinement.  The Court liberally construes the facts stated in the complaint in the light most favorable to Plaintiff.  The following facts are gleaned from Plaintiff's complaint:

1.     Plaintiff's requests for access to legal books and papers were denied by Lt. Anderson Sanders.

4

2.      Plaintiff requested to be housed away from dangerous inmates. On March 8, 2011, another inmate, James May ("May"), attempted to stab Plaintiff in the neck repeatedly.

3.      Officer Stevenson[1] pinched Plaintiff on the behind "during a meal pass."

4.      Plaintiff "has suffered from drastic weight loss and constant hunger due to the poor nutritional value of food served."

5.      The commissary charges $1.00 for Ramen Noodles, $1.60 for a roll of toilet paper, and $2.75 each time an inmate deposits money in his commissary account.

6.      The facility censors all media and reading material.

7.      Telephone calls costs $1.50 for a ten minute local call and the contractor charges a $7.00 convenience fee to add funds to a prepaid account.

8.      Inmates are denied a fair and impartial tribunal when they violate facility rules.

9.      Inmates in "D-Seg" are subjected to cruel conditions.

    a.      "D-Seg" meals are served on Styrofoam trays with smaller portions.

    b.      Personal hygiene items are allowed only once per day during "out time."

    c.      Pen, paper, and legal papers can only be accessed during this "out time[]" and "[a]ccess to counsel is inhibited" (Doc. 2, p. 7).

    d.      Exercise is allowed during this "out time" but under restraint of handcuffs and leg shackles.

---

[1]      Plaintiff did not identify Officer Stevenson as a defendant in the style of his case or in the "Parties" section of his complaint where he listed all the defendants.

5

e.      Telephone use is permitted during this "out time" so inmates have to decide what to do during this "out time" which is scheduled to last an hour "but seldom exceeds 20 minutes."

f.      "D-Seg" prohibits reading material.

g.      "D-Seg" inmates are confined for approximately 23 hours a day, receiving only one hour or less of "out time."

h.      Inmates sentenced to "D-Seg" for violating institutional rules are given a specific sentence, but because they have to wait for the "Captain's Review" before being returned to the general population, they remain on "D-Seg" longer than their original "D-Seg" sentence.

10.      On February 28, 2011, Plaintiff suffered "an injury requiring medical attention" but he did not receive any medical attention until later that day or the next day when he received ibuprofen. On March 1, 2011, the day after he suffered the injury, he was taken to the infirmary but denied any medication until "'med pass' at 19:00 p.m."

11.      On March 28, 2011, Plaintiff was "negligently given another inmate's medications[,]" and suffered an adverse reaction.

## IV.   DISCUSSION

### A.   Official Capacity Claims

Plaintiff has sued the Defendants in this case in both their official and individual capacities. A claim against Defendants in their official capacities is treated as an action against the governmental entity. *Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Barber v. City of Salem, Ohio*, 953 F.2d 232, 237 (6th Cir. 1992). Because Defendants have been sued in their official capacities as employees of Bradley County, Tennessee, the Court

6

must proceed as if Plaintiff has in fact sued Bradley County. Therefore, in order to prevail, Plaintiff must demonstrate that the alleged violation of his constitutional rights resulted from acts representing official policy or custom adopted by Bradley County. *Monell v. Dept. of Social Services of the City of New York*, 436 U.S. 658, 690-91 (1978); *Leach v. Shelby County Sheriff*, 891 F.2d 1241, 1245-46 (6th Cir. 1989), *cert. denied*, 495 U.S. 932 (1990).

In order to prevail in an action against a defendant in his official capacity, a plaintiff must show, first, that he has suffered harm because of a constitutional violation and second, that a policy or custom of the entity--in this case, Bradley County--caused the harm. *See Collins v. Harker Heights, Tex.*, 503 U.S. 115, 120 (1992). Plaintiff must identify the policy, connect the policy to the county itself, and show that the particular injury was incurred because of the execution of that policy; all of which Plaintiff has failed to do. *See Garner v. Memphis Police Dept.* 8 F.3d 358, 363-64 (6th Cir. 1993), cert. denied, 510 U.S. 1177 (1994) (citation omitted).

Plaintiff does not allege that the violation of his rights resulted from any policy or custom on the part of Bradley County. Although Plaintiff has made some general complaints about the policies of the Bradley County Justice Center, he has not provided any details to substantiate his general complaints, nor has he identified any policy, connected the policy to Bradley County, and shown that any alleged injury was incurred because of the execution of a Bradley County policy. Plaintiff's failure to demonstrate that the alleged violations of his constitutional rights resulted from acts representing official policy or custom adopted by Bradley County is fatal to his complaint, as it has resulted in his failure to state a constitutional violation against the County.

7

Moreover, as explained below, Plaintiff has failed to show he suffered any harm because of a constitutional violation. Therefore, to the extent Defendants are sued in their official capacities, they are entitled to judgment as a matter of law.

**B.    Individual Capacity Claims**

Plaintiff has also sued the Defendants in their individual capacities. Plaintiff has raised ten claims along with several sub-claims, which the Court addresses below.

1.    *Law Library*

Plaintiff contends the Bradley County Justice Center fails to provide adequate access to a law library. Specifically, Plaintiff made "several requests to access legal books and papers in an effort to assist or prepare a legal defense[,]" but Lt. Anderson Sanders refused the request, explaining that Bradley County Justice Center does not have a law library (Doc. 2).

Prisoners have a constitutional right of access to the courts. *Lewis v. Casey*, 518 U.S. 343 (1996). An inmate who is claiming he was denied access to court, however, must "demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim." *Id.* at 351. Plaintiff has not made a showing that he has been hindered in his effort to pursue a non-frivolous legal claim. *See Hadix v. Johnson*, 182 F. 3d 400, 404 (6th Cir. 1999) ("An inmate must demonstrate an 'actual injury,' which, the Court said, cannot be shown 'simply by establishing that his prison's law library or legal assistance program is sub-par in some theoretical sense.'") (quoting *Lewis v. Casey*, 518 U.S. 343, 351 (1996). To demonstrate the lack of access has hindered his efforts to pursue a legal claim, an inmate must establish the prison official impeded his pursuit of a non-frivolous post-

conviction or civil rights action, i.e., a denial or dismissal of a direct appeal, habeas petition, or civil rights case seeking to vindicate basic constitutional rights. *Lewis v. Casey,* 518 U.S. at 348-354.

Plaintiff's allegation that he has been denied access to a law library lacks sufficient specificity to give rise to a constitutional deprivation. Plaintiff has failed to allege any prejudice to this litigation, a direct appeal, a habeas petition, or any other civil rights action under 42 U.S.C. § 1983 to "vindicate basic constitutional rights." *Lewis v. Casey,* 518 U.S. at 354; *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996) ("An inmate who claims his access to the courts was denied fails to state a claim without any showing of prejudice to his litigation"). Therefore, Plaintiff has failed to demonstrate a constitutional violation. Accordingly, Plaintiff's claim that he was not provided with adequate access to a law library will be **DISMISSED** for failure to state a claim upon which relief may be granted. 28 U.S.C. §§1915(e) and 1915A.

### 2. *Deliberate Indifference to Safety*

Next Plaintiff claims the Bradley County Justice Center does not classify violent and dangerous inmates and house them separately. Plaintiff alleges he requested to be housed separately from inmates with aggravated offenses. Plaintiff further alleges that on March 8, 2011, inmate May attempted to repeatedly stab him in the neck which resulted in Plaintiff being traumatized and placed in fear.

The Eighth Amendment "requires that inmates be furnished with the basic human needs, one of which is reasonable safety." *Helling v. McKinney*, 509 U.S. 25, 33 (1993). Thus, it is well established that prison officials have a constitutional duty to protect

prisoners from violence at the hands of their fellow inmates. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994).

An Eighth Amendment claim consists of both an objective and subjective component. *Id.* at 834. Therefore, to state a failure to protect claim against a prison official under the Eighth Amendment, an inmate must demonstrate he is incarcerated under prison conditions that pose a substantial risk of serious harm and that the prison official had the culpable state of mind of deliberate indifference to the inmate's health or safety. *Id.* at 838. A sufficiently serious deprivation satisfies the objective component, and a "sufficiently culpable state of mind" satisfies the subjective component. *Id.* at 834. Nevertheless, every injury suffered by a prisoner at the hands of another prisoner does not always translate into a constitutional liability for the prison officials responsible for the victim's safety. *Id.*

In prison condition cases, to satisfy the culpable state of mind component, a prisoner must demonstrate the prison official acted with deliberate indifference to the inmate's safety. *Id.* "[D]eliberate indifference describes a state of mind more blameworthy than negligence." *Id.* at 835. The Supreme Court has explained that "acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* The Court further explained "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Plaintiff's factually unsupported argument, from which he presumably expects the Court to infer that the failure to classify dangerous criminals resulted in the attempted stabbing of him, is tenuous at best. Plaintiff's general and factually unsupported claim fails to allege either the objective or subjective component of an Eighth Amendment claim that he was housed under conditions posing a substantial risk of serious harm. First, Plaintiff does not identify the prison official to whom he allegedly requested "to be classified away from inmates with aggravated offenses" or allege any named Defendant possessed the culpable state of mind. Consequently, Plaintiff presents nothing from which the Court may even infer one of the named Defendants actually knew of a substantial risk to Plaintiff's safety and failed to respond reasonably. Therefore, he has failed to meet the subjective component of an Eighth Amendment violation.

Nevertheless, even if the Court presumes Plaintiff is referring to the named Defendants, his bald claims that the Bradley County Justice Center does not classify violent and dangerous inmates into separate housing and he was a victim of an attempted stabbing are factually insufficient to establish Plaintiff was housed in conditions posing a substantial risk of serious harm to him.

Even assuming the Bradley County Justice Center's classification policy or lack thereof ignores an obvious risk to the safety of inmates detained in the jail, there are no factual allegations sufficient to support Plaintiff's claim that this lack of policy resulted in the alleged attempted stabbing. More specifically, Plaintiff has alleged no facts from which the Court could reasonably infer that the Bradley County Justice Center's lack of a classification policy resulted in May's attempt to stab Plaintiff. This is so because Plaintiff's claim is factually insufficient. Plaintiff's failure to identify the crimes for which

he and Mays were incarcerated prevents the Court from reasonably inferring he was a non-violent criminal housed in a violent-criminal section of the Justice Center. In addition, there is nothing in the record indicating May posed a risk to him before the alleged attempted attack, or that any jail official was aware of and disregarded May's presumed violent propensities. Consequently, there is nothing before the Court which permits it to reasonably link the attack on Plaintiff to any supposed flaw in the Bradley County Justice Center's classification policy.

In sum, Plaintiff's failure to identify the crimes for which he and May's were incarcerated, the location of the altercation, or any details surrounding the alleged attempted stabbing, is fatal to this claim. There simply is nothing before the Court from which it can infer that May was the aggressor, charged with an aggravated offense, and improperly housed in close proximity to Plaintiff, and that the lack of a classification policy exposed inmates like Plaintiff to a serious risk of harm. Finally, as previously noted, there are no facts indicating that any named Defendant knew of and disregarded an excessive risk to Plaintiff's safety.

Accordingly, because Plaintiff has not sufficiently alleged an Eighth Amendment claim that he was not protected from attempted violence at the hands of another prisoner, this claim will be **DISMISSED** for failure to state a claim upon which relief may be granted.

3.    *Sexual Contact*

Plaintiff claims Officer Stevenson pinched him on the behind "during a meal pass[,]" which he interpreted as sexual provocation  (Doc. 2, p. 4).  Plaintiff alleges he suffered emotional distress.

12

The Sixth Circuit has held that minor isolated incidents of sexual touching coupled with occasional offensive sexual remarks do not rise to an Eighth Amendment violation. *Jackson v. Madery*, 158 Fed.Appx. 656 661 (6th Cir. 2005) (rubbing and grabbing buttocks in a degrading and humiliating manner did not rise to constitutional violation, as it was isolated, brief, and not severe); *Johnson v. Ward,* 215 F.3d 1326 (6th Cir. May 11, 2000), *available at* 2000 WL 659354, at *1 (groping of buttock did not meet Eighth Amendment objective component).

Aside from the fact that Officer Stevenson is not named as a defendant in his complaint, Plaintiff, without providing any facts surrounding the alleged incident, has asserted no more than an isolated minor offensive touching. While such behavior is condemned if true, it does not rise to the level of a constitutional violation i.e., Plaintiff's right to be free from cruel and unusual punishment. *See Tuttle v. Carroll County Detention Center,* No. 10-5693, 2012 WL 4215747, at *1 (6th Cir. Sept. 21, 2012) ("His bare-bones allegation that the female deputy '*grabbed* my privates and *squeezed them really hard*' is simply too subjective and vague to state an Eighth Amendment violation.") (emphasis in original).

Accordingly, Plaintiff's claim that Officer Stevenson pinched his behind, even if true, does not state a constitutional violation and therefore will be **DISMISSED**.

        4.    <u>*Alleged Lack of Nutritious Meals*</u>

Plaintiff claims he has suffered from "drastic weight loss and constant hunger due to the poor nutritional value of the food served." (Doc. 2). In addition, Plaintiff complains that the potatoes and rice are often undercooked and meat is rarely served.

As previously, discussed, inmates alleging an Eighth Amendment violation based on prison conditions must demonstrate that prison officials were deliberately indifferent to their health or safety by subjecting them to a substantial risk of serious harm. *Farmer v. Brennan,* 511 U.S. 825, 834 (1994). The deprivation alleged must objectively be sufficiently serious so as to result in a denial of the "minimal civilized measures of life's necessities." *Id.* at 834 (quoting *Rhodes v. Chapman,* 452 U.S. 337, 347 (1981). Thus, the deprivation of life's necessities, such as food or water, can constitute a claim under the Eighth Amendment. *See Dellis v. Corrections Corp. of America,* 257 F.3d 508, 512 (6th Cir. 2001).

In proving the objective component, an inmate must establish some degree of actual or potential injury, and that "society considers the risks that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk." *Helling v. McKinney*, 509 U.S. 25, 36 (1993) (emphasis in original). In other words, here, Plaintiff must show that the diet which he was provided "is not one that today's society chooses to tolerate." *Id.* To prove the subjective component, a prisoner must demonstrate the prison official was aware of and disregarded the excessive risk to inmate health or safety.

When it comes to meals, complaints about the preparation or quality of prison food generally do not amount to an Eighth Amendment violation. Rather, a constitutional violation can be established with proof that the meals were insufficient to maintain normal health. *Cunningham, v. Jones*, 567 F.2d 653, 659-660 (6th Cir. 1977).

Here, Plaintiff complains the meals are not nutritionally balanced but fails to provide a description of the meals to support his bald claim. In addition, he complains

that he lost weight but fails to identify his starting and present weight. Finally, Plaintiff alleges the deficiency in the diet has taken a physical toll on his health but fails to identify even one physical ailment that he has suffered as a result of the alleged deficient diet.

Because Plaintiff failed to describe the types of food and portions served, he has failed to sufficiently allege his prison meals were nutritionally insufficient to sustain normal health. Indeed, Plaintiff has not shown that he was substantially deprived of food or shown the type of significant weight loss which may be an indication of inadequate nutrition. *Ward v. Gooch*, 2010 WL 4608292, *6 (E.D.Ky. Nov. 5, 2012) (claim that inmate lost over 60 lbs. and was fed 200 to 700 calories a day for almost a year, losing over 60 lbs. sufficiently alleged a claim).

Plaintiff's unverified complaint which is lacking in specific facts concerning his alleged weight loss and the alleged non-nutritious prison diet fails to allege an objectively sufficiently serious deprivation. Plaintiff's "'naked assertion[s]' devoid of 'further factual enhancement[,]'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 557 (2007), are not sufficient to support an Eighth Amendment claim. Moreover, Plaintiff does not allege that any of the named Defendants possessed the requisite culpability. Accordingly, Plaintiff's factually unsupported allegations that he was denied nutritious meals will be **DISMISSED** for failure to state a claim upon which relief may be granted.

5.   *Commissary Items*

Plaintiff generally complains that commissary items are overpriced, and specifically objects to the $1.00 charge for Ramen Noodles and the $1.60 charge for a

roll of toilet paper.[2]  In addition, Plaintiff complains that when money is placed in an inmate's commissary account, there is a $2.75 fee for the deposit.

Plaintiff cites to no provision of the United States Constitution as the basis for these claims and, indeed, these claims simply do not state a claim of constitutional magnitude.  *See French v. Butterworth,* 614 F.2d 23, 25 (1st Cir. 1980) ("We also reject French's contention that he and fellow inmates have a constitutionally protected interest in buying food as cheaply as possible"); *see also Thompson v.* Gibson, 289 F.3d 1218, 1222 (10th Cir. 2002) ("[T]here is no constitutional right to purchase food from the canteen").  Commissary pricing does not implicate constitutional concerns. *Tokar v. Armontrout,* 97 F.3d 1078, 1083 (8th Cir. 1996) ("[W]e know of no constitutional right of access to a prison . . . snack shop."); *Dowdy v. Albemarle Charlottesville Regional Jail*, 2011 WL 5075089 (W.D.Va. Oct. 25, 2011) (complaint of price gouging including $1.00 for packet of Ramen Noodles failed to state a claim), *Bennett v. Sheahan*, 1999 WL 967534, *4 (N.D.Ill., Oct. 5, 1999) ("Commissary prices implicate no constitutional right").

In sum, commissary access is a privilege, not a right, and these allegations fail to state a cognizable constitutional claim for relief under 42 U.S.C. § 1983.  Consequently, Plaintiff's complaints about the commissary, its prices, and charge to place money in an inmates' account do not raise claims of constitutional violations.  If Plaintiff does not wish to pay the complained of amounts, he should not patronize the commissary.

---

[2]    Plaintiff alleges inmates are issued inadequate amounts of toilet paper and then told to buy extra at the commissary for $1.60 per roll.  Plaintiff's bald claim that inmates are issued inadequate amounts of toilet paper insufficiently alleges a denial of the "minimal civilized measure of life's necessities," *Rhodes v. Chapman,* 452 U.S. 337, 347 (1981), and therefore, does not state a constitutional violation.

Accordingly, because Plaintiff has no constitutional right of access to the commissary, his claims attacking their prices and fees are not of constitutional significance and will be **DISMISSED** for failure to state a claim upon which relief may be granted.

6.    *Censorship*

Plaintiff's censorship claim is confusing, if not contradictory.    First, Plaintiff complains that "[t]he facility censors all outside media." (Doc. 2).  Then, Plaintiff alleges "T.V.'s are turned off for certain broadcasts.  Some channels are disallowed. Articles are removed from newspapers.   All books and magazines are refused as oversize mail." (Doc. 2).

Although inmates have a First Amendment right to information while in prison, this right is not without limits.   Prison regulations may constitutionally impinge on this right as long as the regulations are "reasonably related to legitimate penological interests."    *Turner v. Safley,* 482 U.S. 78, 89 (1987).   Thus, "restrictive prison regulations are permissible if they are reasonably related to legitimate penological interest, and are not an exaggerated response to such objectives." *Beard v. Banks,* 548 U.S. 521, 528 (2006) (internal punctuation and citations omitted).

Here, however, Plaintiff's factually unsupported claim of unconstitutional censorship, taken as true, is not sufficient to state a First Amendment violation.  Plaintiff has not specifically described anything that has been censored or alleged he has been subjected to censorship, i.e., denied actual books, magazines, or a broadcast.  These deficiencies in Plaintiff's complaint are fatal to his claim.

17

Although the Court recognizes *pro se* pleadings are to be held to a less stringent standard than pleadings drafted by lawyers, *Haines v. Kerner,* 404 U.S. 519, 520-21 (1972), the Court is not required to create a claim for a *pro se* plaintiff. To require otherwise, "would not only strain judicial resources by requiring [district] courts to explore exhaustively all potential claims of a *pro se* plaintiff, but would also transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Beaudett v. City of Hampton,* 775 F.2d 1274, 1278 (4th Cir. 1985).

Here, Plaintiff has failed to allege that his constitutional rights have been violated as he has not alleged any of his mail was censored, identified any of the alleged censored items, or set forth any facts indicating that any of the named defendants were directly involved in or personally responsible for the alleged violation of his constitutional rights. Plaintiff's factually unsupported claims are overbroad and vague and fail to raise a cognizable constitutional claim. Accordingly, Plaintiff's deficient censorship claim will be **DISMISSED** for failure to raise a claim upon which relief may be granted.

### 7. *Telephone Calls*

Next, Plaintiff claims telephone calls are overpriced and too restricted. Plaintiff complains that only collect calls are allowed from the facility to residential phone numbers and "[a]ll other phone numbers to cellular & cable companies are blocked." Plaintiff states that a pre-paid account may be established but to do so, inmates are charged "collect" rates i.e., $1.50 for a ten minute local call.[3] Plaintiff complains that

---

[3]     The rate of $1.50 for a ten (10) minute phone call is "not so out-of-line with normal phone rates as to be unconscionable." *See Carter v. O'Sullivan*, 924 F.Supp. 903, 911 (C.D. Ill. 1996) ($3.20 a minute for a phone call from Illinois to Florida was not unconscionable and nothing precluded prisoner from writing to save money) *aff'd*, 124 F.3d 203 (7th Cir. June 30, 1997), *available at* 1997 WL 374681.

inmates are unable to access competitive carriers with lower prices and alleges Sheriff

Jim Ruth receives large refund checks for the exclusive contract. Finally, Plaintiff

complains that the contractor charges a $7.00 convenience fee to add funds to a

prepaid account.

While prisoners retain the right to communicate with friends, family, and counsel

while in prison, they do not have a right to unlimited telephone calls. *See Washington v.

Reno*, 35 F.3d 1093, 1099 (6th Cir. 1994). "Instead, a prisoner's right to telephone

access is subject to rational limitations in the face of legitimate security interests of the

penal institution. The exact nature of telephone service to be provided to inmates is

generally to be determined by prison administrators, subject to court scrutiny for

unreasonable restrictions." *Id.* (internal punctuation and citations omitted). In addition,

there is no authority for the proposition that prisoners are entitled to a specific rate for

their telephone calls. *See Boyer v. Taylor,* 2007 WL 2049905, *9 (D.Del., July 16,

2007). As the Supreme Court explained in *Overton v. Bazzetta,* 539 U.S. 126, 132

(2003), a case where it rejected a First Amendment challenge to the prison's denial of

visitation, some curtailment of the freedom to associate with family and friends is

expected in the prison setting.

> The very object of imprisonment is confinement. Many of the liberties and
> privileges enjoyed by other citizens must be surrendered by the prisoner.
> An inmate does not retain rights inconsistent with proper incarceration.
> And, as our cases have established, freedom of association is among the
> rights least compatible with incarceration. Some curtailment of that
> freedom must be expected in the prison context.
> . . . .
>
> The burden . . . is not on the State to prove the validity of prison
> regulations but on the prisoner to disprove it.

Case 1:11-cv-00086-HSM-WBC   Document 3   Filed 09/08/14   Page 19 of 28   PageID #: 37

*Id.* at 131 (internal citations omitted). Thus, by analogy, some curtailment of an inmate's right to associate with friends, family members, and counsel by telephone is expected in prison.

Here, Plaintiff has not provided any information from which the Court could even infer the Bradley County Justice Center's regulations pertaining to phone calls infringe upon his constitutional right to communicate with family, friends, and counsel; Plaintiff makes no such allegation. Rather, Plaintiff complains generally about the available phone service and associated costs, but he does not claim his right to communicate with family, friends, and counsel was violated. Thus, Plaintiff's complaint about the amount inmates are charged for making phone calls fails to establish a constitutional violation of his right to communicate with family, friends, and counsel. Moreover, it does not appear that Plaintiff can complain his constitutional rights were violated because if Plaintiff does not wish to pay the costs to make telephone calls, he is still free to contact family, friends, and counsel through written means of communication.

Consequently, Plaintiff's claims fail to demonstrate the current inmate telephone system and policies in effect at the Bradley County Justice Center unreasonably restrict or impair his constitutional right to communicate with family, friends, and counsel. Accordingly, absent a violation of a constitutional right, Plaintiff's claim that telephone calls are overpriced and too restricted will be **DISMISSED** for his failure to state a viable claim under 42 U.S.C. § 1983.

8      _Fair and Impartial Tribunal_

Plaintiff complains that the Bradley County Justice Center does not provide a fair and impartial tribunal to handle disciplinary matters, and when an inmate is found guilty of violating a facility rule he is placed in disciplinary segregation.

Prior to depriving an inmate of a protected liberty interest, due process entitles him to written notice of the hearing at least 24 hours in advance, the limited right to call witnesses and present evidence, a written decision addressing the evidence relied on and the reasons for the action, and an impartial tribunal. _Wolff v. McDonnell_, 418 U.S. 539 (1974). However, the due process procedures required by _Wolff_ are not required unless the challenged discipline implicates a liberty interest by imposing "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." _Sandin v. Conner,_ 515 U.S. 472, 483 (1995) (30 days in punitive segregation was neither atypical or a significant hardship).

Disciplinary segregation generally does not satisfy the _Sandin_ requirement. _Id._ (prisoner's disciplinary segregation did not implicate due process liberty interest); _Joseph v. Curtin,_ 410 Fed.Appx. 865, 867 (6th Cir. 2010) (finding nothing in plaintiff's complaint suggests there was anything atypical and significant about his 61-day stay in administrative segregation); _see also Backey v. South Carolina Dep't of Corr.,_ 73 F.3d 356 (5th Cir. Jan. 3, 1996), _available at_ 1996 WL 1737 (Plaintiff's "allegations of wrongful placement in administrative segregation did not involve the kind of significant or atypical hardship necessary to invoke the due process rights he avers were violated[,]"); _Joseph v. Gillespie,_ 73 F.3d 357 (4th Cir. Dec. 21, 1995), _available at_ 1995 WL 756280  ("Administrative segregation is not an atypical and significant hardship

relative to the ordinary incidents of prison life that would give rise to a liberty interest protected by any procedure.") (internal punctuation and citation omitted)).  Moreover, even if Plaintiff possessed a valid liberty interest, he has not claimed he was subject to disciplinary segregation, and therefore, has failed to demonstrate a violation of his constitutional rights.

As previously explained, to state a § 1983 claim, Plaintiff must allege a defendant, while under color of law, violated his constitutionally protected rights and caused injury.  Here Plaintiff does not identify any Defendant in relation to this claim, nor does he claim he was subjected to any disciplinary proceedings.  "A federal court's jurisdiction can be invoked only when the plaintiff himself has suffered 'some threatened or actual injury resulting from the putatively illegal actions.'"  *Warth v. Seldin,* 422 U.S. 490, 499 (1975) (quoting *Linda R.S. v. Richard D.,*  410 U.S. 614, 617 (1973).

In sum, Plaintiff has failed to establish due process was required in disciplinary hearings at the Bradley County Justice Center.  In addition, Plaintiff, who does not claim he sustained a direct injury as a result of the complained of action, lacks standing to challenge the Bradley County Justice Center's disciplinary hearing procedures. Accordingly, Plaintiff's claim challenging the procedure for handling disciplinary hearings at the Bradley County Justice Center  will be **DISMISSED** for failure to state a claim on which relief may be granted.

9.     *Conditions of "D-Seg" Confinement*

In his ninth claim, Plaintiff provides a list of conditions to which he claims "D-Seg" inmates are subject, but once again, he does not claim he was confined in "D-Seg."

Plaintiff's general complaints about the conditions of "D-Seg" confinement fail to state a violation of his constitutional rights.

To prevail on a conditions of confinement claim, an inmate must demonstrate that he has been deprived "of the minimal civilized measure of life's necessities," in order to prove his conditions amounted to cruel and unusual treatment in violation of the Eighth Amendment. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). "Conditions must not involve the wanton and unnecessary infliction of pain, nor may they be grossly disproportionate to the severity of the crime warranting imprisonment." *Id.*

Plaintiff's general complaints about the conditions of confinement in "D-Seg" do not include a claim that he was personally housed in this unit, and therefore, do not amount to a constitutional violation of his constitutional right to the minimal civilized measure of life's necessities. Additionally, there is no allegation of any involvement on the part of the Defendants. Therefore, because Plaintiff's allegations fall short of demonstrating he was subjected to the alleged unconstitutional prison conditions and fail to identify any named Defendant in relation to this claim, relief is not warranted.

Accordingly, this claim will be **DISMISSED** for failure to state a claim upon which relief may be granted.

10. *Medical Care*

Plaintiff's tenth claim consists of two specific alleged incidents pertaining to his medical treatment. To support his general claim that inmates are not provided adequate and reasonable healthcare, but rather are subjected to negligent healthcare and malpractice, Plaintiff alleges he suffered an unidentified injury for which he received

delayed medical care of Ibuprofen and Aleve, which he seemingly contends was inadequate.

In the second part of this claim, Plaintiff alleges he was negligently given another inmate's medication and suffered an adverse reaction. The Court will address Plaintiff's delayed/inadequate medical care claim separately from his claim that he was negligently administered another inmate's medication.

### a. Delayed/Inadequate Medical Care

Plaintiff's claim is confusingly pled. Plaintiff claims he suffered some unidentified injury requiring medical attention on February 28, 2011, but was denied medical care on that date when an officer advised him "no sick call could . . . be handled by the evening shift." (Doc. 2, p. 9). Notably, Plaintiff fails to provide the time he allegedly suffered this injury. Nevertheless, Plaintiff alleges, "after shift change (06:00 am)," upon inquiry, he was advised his sick call request was not received in time by the appropriate official, but nonetheless, that evening medical gave him "5 X 200mg Ibuprofen." (Doc. 2, p. 10). Yet, Plaintiff claims that on March 1, 2011, (which is the day after he allegedly suffered this unidentified injury), he was taken to the infirmary where he was informed the jail did not provided Ibuprofen to inmates and he received no pain medication until "med pass at 19:00 pm." (Doc. 2, p. 10). Plaintiff maintains that although "[t]he severity of the pain lessened over the next few weeks" it "persisted" but Dr. Gurley and Dr. Bates, his treating physicians, refused to prescribe any type of pain medication other than Aleve.

The Eighth Amendment "forbids prison officials from unnecessarily and wantonly inflicting pain on an inmate by acting with deliberate indifference toward his serious

medical need." *Reilly v. Vadlamundi,* 680 F.3d 617, 623 (6th Cir. 2012) (internal punctuation and citations omitted). "First, a plaintiff must plead facts which, if true establish a sufficiently serious medical need." *Id.* at 624. A serious medical need is one for which treatment has been recommended or for which the need is so apparent that even a layman would recognize care is required. *Blackmore v. Kalamazoo County,*390 F.3d 890, 897 (6th Cir. 2004)

Second, a plaintiff must establish the subjective component, i.e., Defendants acted with a sufficiently culpable state of mind in denying medical care. *Reilly v. Vadlamundi¸* 680 F.3d at 624. A prison official's deliberate indifference to serious medical needs of prisoners will violate the Eighth Amendments proscription against cruel and unusual punishment and is actionable under 42 U.S.C. § 1983. *Estelle v. Gamble,* 429 U.S. 97, 104 (1976). "Deliberate indifference is characterized by obduracy or wantonness−it cannot be predicated on negligence, inadvertence, or good faith error." *Reilly v. Vadlamundi,* 680 F.3d at 624. "Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." *Estelle v. Gamble,* 429 U.S. at 106.

Here, because Plaintiff has failed to identify his alleged medical condition, he has failed to satisfy the first element of an Eighth Amendment medical claim. Plaintiff's complaint negates any inference that Defendants acted with deliberate indifference to his serious medical need, as it cannot be concluded that he has described a sufficiently serious medical need. Indeed, Plaintiff provides no description whatsoever of his alleged injury. Furthermore, his complaint indicates he did not suffer a serious medical

injury, as the medical staff and physicians simply treated the alleged injury with Ibuprofen and Aleve which alleviated the severity of the pain over the next few weeks, though Plaintiff seemingly suggests he would have preferred another avenue of treatment. These complaints, however, simply do not rise to the level of a serious medical need for purposes of constitutional analysis. Thus, under these circumstances, Plaintiff cannot state a cognizable Section 1983 claim that Defendants were deliberately indifferent to his serious medical needs.

Accordingly, because Plaintiff failed to establish he had a serious medical condition, his delayed/inadequate medical care claims will be **DISMISSED** as frivolous and for failure to state a claim upon which relief may be granted.

b.     Dispensing Incorrect Medication

In his final claim, Plaintiff alleges he was "negligently given another inmate's medications[]" which caused him to lose consciousness and resulted in him being transported to Skyridge Medical Center. (Doc. 2, p. 11). Plaintiff was given a drug to counteract the drug he was inadvertently given and administered multiple "sternum rubs" before eventually regaining consciousness and being returned to the jail.

As previously noted, to establish an Eighth Amendment constitutional violation in relation to medical care, an inmate must establish the defendant acted with deliberate indifference. *Estelle v. Gamble*, 429 U.S. 97 (1976). "The subjective component of Eighth Amendment claims 'is meant to prevent the constitutionalization of medical malpractice claims[.]" *Barnett v. Luttrell,* 414 Fed.Appx. 784, 788 (6th Cir. 2011) (quoting *Dominquez v. Correctional Med. Servs.*, 555 F.3d 543, 550 (6th Cir. 2009)).

"Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle v. Gamble,* 429 U.S. at 106.

Initially, the Court observes that Plaintiff does not identify the person who allegedly administered the incorrect medication to him. Thus, Plaintiff has not alleged any of the Defendants administered the incorrect medication to him. Moreover, Plaintiff does not allege that whoever did administer the wrong medication to him, knew he or she was giving him the incorrect medication or that giving him the medication would result in Plaintiff losing consciousness. Plaintiff alleges no facts suggesting the incorrect dispensing of another inmate's medication to him was anything more than negligence or medical malpractice. Absent any facts indicating otherwise, it appears the incorrect administering of another inmate's medication to Plaintiff constitutes medical malpractice at most and is not an Eighth Amendment violation. *See Barnett v. Luttrell,* 414 Fed.Appx. 784, 788 (6th Cir. 2011) (nothing suggested nurse's incorrect administering of Dilantin, an anti-seizure medication, rather than Ibuprofen, was anything other than negligence, constituting medical malpractice at most).

Accordingly, as negligence and medical malpractice are not constitutional violations under § 1983, Plaintiff's claim that he was negligently given another inmates medicine will be **DISMISSED** for failure to state a claim upon which relief may be granted.

## V.    CONCLUSION

In summary, even liberally construed, Plaintiff's complaint does not contain allegations reasonably suggesting he may have a valid federal claim. *See Lillard v. Shelby County Bd. of Educ.,* 76 F.3d 716, 726 (6th Cir. 1996) (complaint must contain

allegations addressing all the material elements to sustain a recovery under some viable legal theory).   The instant complaint has not set forth the factual basis for Plaintiff's claims in a manner that raises a sufficient claim of a constitutional violation or gives Defendants proper notice of the specific claims against them. Neither the Court nor Defendants are required to "conjure up unpled allegations."   *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989).

Plaintiff's complaint is wholly inadequate because his vague assertions are glaringly insufficient to show that he suffered a violation of his constitutional rights. Accordingly, because Plaintiff's general factually unsupported statements fail to state constitutional violations and are insufficient under § 1983, his complaint against the Defendants will be *sua sponte* **DISMISSED** in its entirety pursuant to 28 U.S.C. §§ 1915A & 1915(e) for failure to state a claim upon which relief may be granted.

An appropriate judgment will enter.

*/s/ Harry S. Mattice, Jr.*
HARRY S. MATTICE, JR.
UNITED STATES DISTRICT JUDGE
